Furnari, J.
This is an action for breach of contract arising from the defendant-insurer’s denial of the plaintiff’s claim for Personal Injury Protection (“PIP”) benefits under the uninsured motorists provision of a motor vehicle policy issued to the plaintiff’s mother by the defendant. The defendant contended that the plaintiff was not covered by his mother’s policy because he was not “living in” his mother’s “household” at the time he sustained his injuries.[1]
Both parties filed Dist./Mun. Cts. R. Civ. P, Rule 56 motions for summary judgment. After hearing, the court allowed the plaintiff’s motion and denied the defendant’s. The defendant has appealed the court’s rulings pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8A.
The defendant’s Rule 8A expedited appeal and supporting materials indicate that in August, 1993, the then twenty-five year old plaintiff took a job as a chef in the restaurant of the Cortina Inn (“the Inn”) in the ski resort town of Killington, Vermont. The plaintiff rented a room from his employer in a house occupied by other Inn employees. On Thursday, January 13, 1994, a fire destroyed the house in question, and the plaintiff was unable to salvage any of his clothing or other belongings. The plaintiff telephoned his parents in Andover, Massachusetts and informed them that he was coming home. He completed his work shift that evening, and was given a room for the night in the Inn by his employer.
The next morning, Friday, June 14, 1994, the plaintiff returned home to his parents’ house in Andover where his parents maintained his bedroom for him, and where he kept personal belongings. The plaintiff spent Friday shopping for clothing with his mother. Friday and Saturday that week were the plaintiff's days off from work, and he was not scheduled to work again at the Inn until Sunday, January 16, 1994. The plaintiff telephoned his employer and made a reservation for a room at the Inn for the next work week.
*156 The next evening, Saturday, January 15,1994, the plaintiff accompanied his sister and friends to the Loft and Ladle in Lawrence, Massachusetts. Later, as the plaintiff was leaving that establishment, he crossed the street and was struck by an uninsured automobile. The plaintiff sustained multiple injuries, including two broken legs, two fractured ribs, bruised kidneys, a fractured scapula and a head injury, which required several weeks of both hospital and rehabilitation center treatment. Upon his discharge, the plaintiff returned to his parents’ house where he has continued to reside.
During the five months that he worked in Vermont, the plaintiff did his banking at a Vermont bank and registered his car in that state. He received mail at his place of employment. The plaintiff did not register to vote in Vermont, and maintained his Massachusetts driver’s license.
In a deposition required by the defendant-insurer, the plaintiff testified that he had intended to return to Vermont on Sunday to work his next scheduled shift, and would have done so if the accident had not occurred. In an affidavit in support of his summary judgment motion, the plaintiff stated:
Although I intended to eventually return to Vermont to look for new housing, I never did so because early in the morning of January 16,1994, I was struck by an uninsured automobile in Lawrence, Massachusetts and suffered serious injuries which required hospitalization.
At the time of the accident, I intended to reside at my parents’ house as my primary residence until I could find alternative housing in Vermont.
1. A review of the record in this case compels the conclusion that the plaintiff has failed to sustain his Rule 56 burden, Pederson v. Time Inc., 404 Mass. 14, 17 (1989), of demonstrating that there was no genuine issue of material fact, and that he was entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). While the construction of an insurance contract is generally a matter of law for the trial court. Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-447 (1992); Kelleher v. American Mut. Ins. Co. of Boston, 32 Mass. App. Ct. 501, 503 (1992), summary judgment must be denied where all facts and circumstances material to the proper interpretation and application of the contract have not been adequately developed or are disputed. See Goodman v. Aetna Casualty & Surety Co., 412 Mass. 807, 813 (1992). Similarly, the specific issue of whether a family member was “living in” the named insured’s “household” so as to qualify for uninsured motorists’ coverage is a question of law, Vaiarella v. Hanover Ins. Co., 409 Mass. 523, 526 (1991), only where the underlying facts and circumstances of the insurance claim are uncontro-verted or have been judicially determined. Id. at 524.
There is no bright line test for the determination of a claimant’s status as a household member.
[Bjecause modern society presents an almost infinite variety of possible domestic situations and living arrangements, the term ‘household member’ can have no precise or inflexible meaning. [Citations omitted]. Analysis of the issue necessarily must proceed on a case-by-case basis with an evaluation of all relevant factors.
Id. at 526-527. See also Andrade v. Aetna Hill & Casualty Co., 35 Mass. App. Ct. 175, 177 (1993). While the “relevant factors” employed by courts in this Commonwealth as well as in other states seem as endlessly varied as the fact patterns of the cases in which they are applied, the predominant considerations include the nature of the claimant’s relationship to the named insured, the individual’s physical presence in or absence from the named insured’s dwelling place, the degree of the individual’s economic dependence upon the named insured, and the intention of the named insured and the claimant with respect to the permanence of the lat *157 ter’s living arrangements. See Annot., Who is a “Member” or “Resident” of Same “Family” or “Household,” Within No-Fault or Uninsured Motorist Provisions of Motor Vehicle Insurance Policy, 96 A.L.R. 3d 804, 807 (1979).
An application of these factors to the Rule 56 materials submitted in this case suggests that at least one relevant issue of fact remains, and that neither party has advanced sufficient evidence to be entitled to the entry of summary judgment as a matter of law.[2]
2. The only factor conclusively established by the record herein is the plaintiffs primary, familial tie to the household in question. See Vaiarella v. Hanover Ins. Co., supra at 527. The term “household” is “generally synonymous with ‘family for insurance purposes,” Black’s Law Dictionary, 6th Ed., and the definition of household member contained in the insurance policy in question as one “related ... by blood, marriage or adoption” obviously encompasses the plaintiff. The plaintiffs formal connection to, and identification with, his parents’ household is easily distinguished from the transient status or informal relationship of a temporary visitor who would be excluded from household member insurance coverage. See Pisani v. Travelers Ins. Co., 29 Mass. App. Ct. 964 (1990).
3. It is also undisputed that the plaintiff was physically living in his parents’ home at the time he sustained his injuries. He had no other residence or place of lodging at that time. See Workmen v. Detroit Auto Inter-Ins. Exchange, 274 N.W.2d 373, 380 (Mich. 1979). Further, the plaintiff returned to his parents’ home to recuperate after his hospital release, see Earl v. Commercial Union Ins. Co., 391 So.2d 934, 938 (La.App. 1980), and has continued to reside with his parents to the present time. Compare Vaiarella v. Hanover Ins. Co., supra at 528-529.
4. As the defendant correctly contends, however, the plaintiff had been back in his parents’ home for only two days. That he was forced to return to his parents’ home by the adverse circumstances of the fire in his rooming house was not per se indicative of any intent to reside permanently in his parents’ home. See generally, Dairyland, Ins. Co. v. Auto-Owners Ins. Co., 333 N.W.2d 322, 326 (Mich. App. 1983). Temporary residence with his parents, during what the defendant argues was merely a transitional stage from the rooming house to new housing in Vermont, would not qualify the plaintiff for PIP benefits as a member of his mother’s household. See Furrow v. State Farm Mut. Auto Ins. Co., 375 So.E. 2d 738, 740 (Va. 1989); Scott v. Glenn, 408 So. 2d 1167, 1169 (La.App. 1981). Thus while the plaintiff’s physical presence in the named insured’s household is clearly relevant to a determination of his entitlement to PIP benefits, the plaintiff’s intent to remain a member of that household as well as his mother’s intent in this regard is significant. See generally Bearden v. Rucker, 437 So.2d 1116, 1121 (La. 1983).
The evidence marshalled by both parties on the question of intent is inconclusive. The defendant emphasizes that at the time of the accident in question, the plaintiff was an adult who had maintained his own place of residence, and had held a full time job, for six months in Vermont. During that period of time, the plaintiff registered his car, did his banking and received mail in that state. Conversely, as the plaintiff argues, he maintained his Massachusetts driver’s license, never registered to vote in Vermont, and kept personal belongings in his parents’ home in the bedroom they maintained for him. See, e.g.American States Ins. Co. v. Walker, 486 P.2d 1042, 1043 (Utah 1971). Neither the nature of the plaintiff’s living accommodations, work in a seasonal resort, nor receipt of mail at his place of employment rather than his residence suggests that he had permanently relocated to Vermont. However, additional evidence is clearly required to assess the significance of the *158 factors relied upon by the parties. The fact that the plaintiff did not register to vote in Vermont, for example, is irrelevant if the plaintiff had never registered to vote in Massachusetts or any other state. Did the plaintiff also receive mail at his parents’ home in Andover, Massachusetts? Did the plaintiffs name appear on a current census or residents’ list in either Andover or Killington?
Further, the plaintiff’s six month residence in Vermont is not alone dispositive in the absence of evidence as to the intent of the plaintiff and his parents at the time he accepted the job in Vermont as well as the plaintiff’s relationship with his parents’ household prior to that time. The absence of a son or daughter from the parental home for periods of time even in excess of six months does not per se require a determination that said son or daughter ceased to be a member of the parental household. College students, see Morgan v. Illinois Farmers Ins. Co., 392 N.W.2d 37, 46 (Minn. App. 1986); Crossett v. St. Louis Fire & Marine Ins. Co., 269 So. 2d 869, 871-872 (Ala. 1972); Manuel v. American Employers Ins. Co., 228 So. 2d 321, 322 (La.App. 1969), children in military service, see Trezza v. State Farm Mut. Auto Ins. Co., 519 So. 2d 649, 652 (Fla. App. 1988); Boswell v. South Carolina Ins. Co., 509 A.2d 358, 362 (Pa.Super. 1986), and even newly emancipated young adults trying out different living accommodations or lifestyles, see Sutherland v. Glens Falls Ins. Co., 493 So. 2d 87, 89 (Fla. App. 1986), have been ruled household members for purposes of insurance coverage under their parents’ policies. In the instant case, did the plaintiff intend to relocate permanently to Vermont or was he there only for the ski season? How often did he return to his parents’ house during this period? Did his parents maintain his bedroom in their home because the plaintiff had a history of brief sojourns in other locales, or of accepting temporary seasonal employment, and then returning home?[3]
Also critical to this area of inquiry is not merely the physical location or age of the family member, but his continued financial dependence on the named insured. See, e.g., Rosenberger v. American Family Mut. Ins. Co., 309 N.W.2d 305, 309 (Minn.1981); Hamilton v. State Farm Mut. Auto. Ins. Co., 364 So.2d 215, 218 (La.App. 1978); Cotton States Mut. Ins. Co. v. McEachern, 218 S.E.2d 645, 647 (Ga. 1975).
Economic dependence is of significance ... [because] it is normally to be expected that, when one member of a family provides financing for other members of the family, that person will also provide insurance coverage for those other members of the family.
Vaiarella v. Hanover Ins. Co., supra at 529. The record in this case is devoid of any evidence on this critical factor.
5. The defendant relies on the plaintiff’s Rule 56 affidavit and deposition testimony as proof that the plaintiff had no intention of remaining in his parents’ home and was not, therefore, a member of their household. However, the plaintiff’s statement of his intent to return to Vermont on scheduled workdays was not conclusive of his household member status or lack thereof. Further, the plaintiff’s statement of his subjective intent “eventually” to return to Vermont to “look” for new housing and to remain with his parents until such housing was found was sufficiently equivocal or susceptible of conflicting inferences to have precluded the allowance of either party’s Rule 56 motion. Finally, the plaintiff’s statements shed no light on the intent and understanding of his mother, the named insured, as to the temporary or permanent nature of the plaintiffs living arrangements and his continued membership in his mother’s household. The intent of the named insured as to those household members entitled to benefits under an insurance policy paid for by the insured is a critical consideration. In short, this case falls within the general rule that summary judgment is disfavored and should be denied where intent, *159 motive or state of mind is at issue. See generally, Mulford v. Mangaro, 418 Mass. 407, 412 (1994); Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 86 (1994).
We conclude on the basis of the foregoing and other considerations that in their present postures, both the plaintiffs claim and the defendant's opposition thereto are based on insufficient and factually inconclusive evidence which precluded a proper resolution of this controversy by means of summary judgment. Accordingly, the trial court's allowance of the plaintiff’s Rule 56 motion and its entry of summary judgment in the plaintiff’s favor are hereby vacated, and this case is returned to the Lowell Division for trial.
So ordered.

The relevant provision of the standard Massachusetts Automobile Insurance Policy states:
“Part 2. Personal Injury Protection
We will pay PIP benefits to or for: ...
2. You, or anyone living in your household, if injured while occupying an auto which does not have Massachusetts Compulsory Insurance or if struck by an auto which does not have Massachusetts Compulsory Insurance [emphasis supplied].”
The Policy defines “household member” as “anyone living in your household who is related to you by blood, marriage or adoption.”

The filing by both parties of cross-motions for summary judgment was, of course, not decisive of either the lack of factual controversy, see. Bernard J. Basch & Sons v. Travellers Indem. Co., 392 Mass. 1002, 1003 (1984), or the absence of a need for further evidentiary exploration of crucial issues at trial.

There is a reference in the plaintiff’s deposition to a six month job in St. Croix sometime prior to his Vermont stay.